## 48523. GENTRY v. THE STATE.

EBERHARDT, Presiding Judge. Michael Gentry and his wife,

Katrina, had experienced domestic difficulties for months. There were frequent arguments and rows ending in fights, and sometimes with his being jailed for assault upon her. After one such jailing he was released on bond and learned that his wife had taken his automobile from a parking lot where he had left it.

After his release she borrowed a neighbor's car and went out to an insurance office where he worked for the purpose of getting some money with which to care for their two young children. He asked her about his car. There is conflict about what she told him as to its whereabouts. She testified that she told him that she had burned the clutch out and that it was in a garage. He testified that she said that it was somewhere out on the Jonesboro Road, and that she arranged with two black men to go with them and get it, using the borrowed car. The two men were picked up and rode in the back seat. Appellant, Mrs. Gentry, drove the car. The husband showed them a .32 caliber pistol that he had purchased to carry in his car for protection in making the debit route for his employer. One of the black men had a sawed-off shotgun, which he displayed.

On arriving at a place in Monroe County, on a side road out in some woods where they were either to get the automobile, as the husband testified, or to get some drugs, as the wife testified, the blacks cautioned that other people at the location (as it turned out, there were none) would suspect the Gentrys as being police because they were well dressed. The Gentry car was not at the place. Indeed there was no car there, nor were any people or drugs.

Mrs. Gentry asked her husband to let her shoot the pistol. He found a block, placed it by a tree and handed her the gun. She shot it five or six times, and returned it. Then one of the blacks pointed the sawed-off shotgun toward Gentry, fired it into his chest and he fell to to the ground. He testified that he called to his wife for help, but that she offered none, and instead stood near where he lay on the ground and said to him, "You should have come on back home, you s.o.b." The blacks then agreed that he should be shot again since they did not wish to leave him alive, and he was shot in the head.

Mrs. Gentry got in the car and left alone — returning to her home in Atlanta, neither stopping nor reporting the matter to anybody. The blacks left on foot.

Mr. Gentry, though seriously disabled by the two shots, managed

to get back to the road, some 200 yards away, and flagged a passerby who took him to the hospital at Barnesville. He was transferred promptly to St. Joseph's Infirmary in Atlanta where, after treatment, he recovered.

Mrs. Gentry was indicted for aggravated assault, and from a conviction she appeals. *Held:*

1. (a) The general grounds of the motion for new trial are without merit. There was, as indicated, conflict in the evidence, but the jury was authorized to give credibility to the state's evidence and conclude from it that she had conspired with the two blacks to take her husband to an isolated place and kill him. Evidence of the conspiracy was circumstantial, but sufficient. *Chappell v. State,* 209 Ga. 701, 702 (75 SE2d 417); *Lumpkin v. State,* 176 Ga. 446 (168 SE 241); *Cummings v. State,* 127 Ga. App. 695 (194 SE2d 629). He was shot and left for dead, and no report was made of it to anybody.

(b) The evidence also authorized a conviction under Criminal Code, § 26-801. See *Swarn v. State,* 230 Ga. 552 (198 SE2d 177). If she was not concerned in the commission of the crime, why did she thus leave her husband for dead and drive back by places from which she could have reported the matter to the sheriff or to police, and on to her home in Atlanta, from which she might have reported it to law enforcement officers, but did not? Why had she stood by making no effort to interfere with the shooting of her husband, and afterward offering no assistance to him — ignoring his call for help? Why had she arranged with two blacks to go with her and her husband to the scene? The jury has resolved these questions in the verdict.

2. The husband's father, who lived in California, came to Atlanta on an occasion about three months prior to the commission of this offense and at a time when the son and his wife were having domestic troubles, to see whether he might help them to get things straightened out. He testified that on that occasion Mrs. Gentry had said to him "if Mike would ever do anything on me, cheat or anything, I'd wait until he went to sleep and I'd shoot him in the face, kill him," to which he replied, "Well, what good would that do? He's got a job and everything," and she said, "Well, if he's dead, I'd get Social Security and more welfare and I'd go live with my mother." Defendant objected on the ground that "all this happened months before; it's not a part of the res gestae. He said they were having financial problems. It doesn't have any bearing on this case." The objection was overruled and

the evidence was admitted "for the purpose of illustrating the state of mind, if it does."

Evidence of this kind is admissible for the purpose of showing a state of mind on the part of the accused, and the fact that the threat or statement was made some three months or more prior to the commission of the offense does not render it inadmissible. *Hixon v. State*, 130 Ga. 479, 482 (61 SE 14), and citations; *Shafer v. State*, 191 Ga. 722 (1) (13 SE2d 798). Nor is the threat inadmissible because it may have been conditional in form (*Golatt v. State*, 130 Ga. 18 (60 SE 107)), or may not have been communicated to the party against whom it was made. *McCray v. State*, 134 Ga. 416 (5) (68 SE 62).

Relative to the matter of Social Security as a motive, see *Davis v. State*, 153 Ga. 669, 676 (113 SE 11); *Canady v. State*, 171 Ga. 11 (2) (154 SE 332); *Johnson v. State*, 186 Ga. 324 (3) (197 SE 786).

3. Error is enumerated on a portion of the charge that: "A crime is a violation of a statute of this state in which there shall be a union or joint operation of act, or omission to act, and intention, or criminal negligence." It is contended that the inclusion of the phrase "or omission to act" rendered this portion of the charge erroneous because in connection therewith the court failed to give the jury any guidelines as to how to apply this principle to the facts of the case.

It is obvious that this was a general definition of crime, encompassing all criminal conduct in this state. It has its genesis in the Code of 1863, § 4185, Code of 1868, § 4227, Code of 1873, § 4292, Code of 1882, § 4292, Penal Code of 1895, § 31, Penal Code of 1910, § 31, Code of 1933, § 26-201, but is taken verbatim from the new Criminal Code of 1968, § 26-601, in which the phrase "or omission to act" first appeared. There are no common law crimes in this state (*Moore v. State*, 94 Ga. App. 210, 211 (94 SE2d 80)); they are all statutory.

There was no request for a definition of the phrase "or omission to act" in this statutory definition of crime, or for guidelines as to it, and we find no error. Cf. *Spurlin v. State*, 222 Ga. 179 (6) (149 SE2d 315); *Anthony v. State*, 112 Ga. App. 444 (5, 6) (145 SE2d 657).

It is not usually cause for a new trial that the judge gave in charge to the jury an entire statutory or Code provision, a part of which is applicable and a part inapplicable to the case under consideration. *Pippin v. State*, 205 Ga. 316 (9) (53 SE2d 482). Thus, no error appears here whether or not there was reliance

by the state upon an omission to act by the defendant as a part of the charge against her. The statutory definition of crime is plain and clear, and we can see no reason to apprehend any confusion on the part of the jury from hearing it as a part of the charge. There is a presumption of their intelligence, certainly to the degree of understanding this definition which is couched in words of common and everyday usage. *Palmer v. Stevens,* 115 Ga. App. 398 (11) (154 SE2d 803).

4. The court charged that "every person concerned in the commission of a crime is a party thereto, and may be charged with and convicted of commission of the crime. A person is concerned in the commission of a crime if he directly commits the crime, or intentionally aids or abets in the commission of the crime, or intentionally advises [or] encourages another to commit the crime."

Error is enumerated because it is not adjusted to the evidence and no guideliness were given to the jury as to how this defendant could be concerned in the commission of a crime, and that it amounted to an expression of opinion that the defendant did aid or abet or intentionally advise or encourage others to commit a crime.

We find no such error in this charge. The charge is based upon, and in a large measure is lifted from Code Ann. § 26-801, which abolished the common law distinction between principal and accessory before the fact, simply making them all "parties to the crime." It is realistic, since the same punishment was provided to them, whether principal or accessory. In its new form the definition of parties is so simple in language that it may be understood even by a wayfaring man.

The charge was adjusted to the evidence, for there was ample evidence from which the jury might conclude that the defendant did aid and abet in the commission of the crime. That guidelines were supplied is evident upon a reading of the next paragraph of the charge wherein the court instructed that "It is not the contention of the state in this case that the defendant pulled the trigger. The state's position is that the defendant is a party to a crime as this term was defined to you . . . and if you should find beyond a reasonable doubt that this defendant did in Monroe County directly commit the crime, or intentionally aid or abet in the commission of the crime, . . . you would be authorized" to convict. There was no expression of opinion as to whether the defendant had or had not aided or abetted in the commission of

the crime.

There is no merit in the contention that this portion of the charge conflicts with the general definition of crime, dealt with in Division 3 because it did not also include the reference to an "omission to act." Here the court was dealing with specifics which were applicable to the evidence before it, and the jury could not have been confused.

*Judgment affirmed. Pannell and Stolz, JJ., concur.*

ARGUED SEPTEMBER 5, 1973 — DECIDED SEPTEMBER 20, 1973 — REHEARING DENIED OCTOBER 5, 1973 — 

*W. B. Mitchell,* for appellant.
*Edward E. McGarity, District Attorney,* for appellee.