## A10A1998. WARE v. THE STATE.
(707 SE2d 111)

ADAMS, Judge.

Clifford Lovett Ware was tried and convicted of the sale of cocaine and sentenced to ten years, four to serve. He appeals following the denial of his amended motion for new trial. He contends the evidence was insufficient in that it only shows that he possessed or delivered cocaine but not that he sold it. He also

contends the trial court committed a related error when charging the jury on the definition of the crime and erred with regard to the admission of certain audio evidence.

Construed in favor of the verdict, the evidence at trial shows that on September 27, 2007, an undercover officer assigned to the Hall County Multi-Agency Narcotics Squad received a call regarding a possible prostitute and went to the specified location — a high crime area — in an unmarked truck. When the officer arrived, the suspected prostitute walked away, but Ware, who was also in the area, approached the officer's truck and asked him what he was looking for. The officer replied that he was looking "for some soft or hard, which would be either crack cocaine or powder cocaine," and, at that point, Ware got into the officer's truck. Ware gave the officer directions to a local hotel, and, when they arrived, Ware "said that he could go over there and he had a hook up over there at the hotel." Ware got out, told the officer to wait in the truck, and headed for the hotel. At that point, the officer drove out of the parking lot in order to have time to get a recorder ready, call for backup, and arrange an open communication line so that agent Andy Smith could hear what was happening. From that point forward the officer's conversations were recorded.

When the undercover officer returned, Ware was very upset about the officer driving off, and he said that they would now have to go somewhere else, which they did. But Ware was unsuccessful at the second location, and he recommended going back to the hotel. During their drive, Ware bragged about having the ability to get drugs and to avoid serving jail time because he had other people — "mules" — who "took all the heat, but tried to pin it on him."

Back at the hotel, Ware gave instructions about where to park and how to drop him off, drive around, and meet him in another parking lot. Ware told the officer to give him the money, and the officer gave him a marked $20 bill. Ware went into a room at the hotel, returned minutes later, and gave the officer two rocks of what proved to be cocaine. Thereafter, agents who had been monitoring the events initiated a traffic stop and arrested Ware. Other agents went to the hotel room, placed a man named Warren Faulkner in custody, and recovered the marked $20 bill from the hotel room.

1. Ware was accused of the "sale of cocaine." OCGA § 16-13-30 (b). Ware argues that although he may have been in possession of cocaine, the evidence was insufficient to establish that he sold it. He argues that no evidence was presented to show that an agreement existed between him and the officer to deliver a particular quantity of cocaine for a particular price; that no evidence showed that he received or retained any consideration for the sale; that he only delivered the cocaine; and that Faulkner was the actual seller.

But "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). And one may be a party if he or she "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b) (3). It is easy to conclude that Ware aided and abetted the sale of cocaine to the undercover officer. "The theory that one may act as a conduit or procuring agent of the purchaser and thereby escape culpability as a seller has been considered and rejected by this Court." (Citations and punctuation omitted.) *Gay v. State*, 221 Ga. App. 263, 265 (1) (a) (471 SE2d 49) (1996) ("Evidence that [defendant] approached [undercover agent], asked what he wanted, and then introduced [the agent] to [a third man], who actually passed the contraband and collected the money is sufficient proof that defendant is guilty, beyond a reasonable doubt, as a party to the crime of selling cocaine."). See, e.g., *Little v. State*, 230 Ga. App. 803, 805 (1) (498 SE2d 284) (1998).

2. In a related enumeration, Ware contends the trial court erred by failing to answer a question the jury asked the court during its deliberations. In general, questions regarding a court's response to jury questions are reviewed for abuse of discretion. *Cloyd v. State*, 237 Ga. App. 608, 610 (3) (516 SE2d 103) (1999). "To determine whether a recharge is erroneous, we examine the charge as a whole, including both the initial charge and the recharge. [Cit.]" Id.

Initially, the court charged the jury on the crime as follows:

> The offense charged in this accusation is sale of cocaine, which provides that it is unlawful for any person to sell any quantity of cocaine, which is a controlled substance.

> Sale means to transfer property, actually or constructively, for consideration either in money or its equivalent.

> The term sale is generally given a broader definition in the drug context than in other fields of law, so as to include not only the exchange of goods for valuable consideration, but also barter and gift and often the offer or agreement to sell, exchange, give or otherwise transfer the drugs to another.

During the deliberations, the jury sent out a note that said, "Can we have the specific definition of "SALE" from OCGA [§] 16-13-30? or is that what we have, word for word."

> "When the jury requests the court to recharge (it) on any point, it is the court's duty to do so." Such further instruc-

tion must be "in plain, clear language . . . calculated to enlighten rather than confuse the jury."

(Footnotes omitted.) *Quiroz v. State*, 291 Ga. App. 423, 426 (3) (662 SE2d 235) (2008).

In colloquy, the court noted that neither that Code section nor the related section of definitions provided a definition of "sale," and the court indicated that it was inclined to refer the jury again to the page of the charges where the above-quoted charge was given. Ware's counsel, who had objected to the original charge, objected again to the original charge and the court's inclination to refer to it again. The court then instructed the jury to "please refer to page 9 of the jury instructions that have been provided."

On appeal, Ware contends that the court's recharge was reversible error because it failed to answer the jury's specific question of whether the charge contained a word-for-word definition of "sale" and, therefore, it left the jury with the impression that it did. Ware adds that the recharge was confusing and may have had the effect of depriving him of his sole defense — that his conduct amounted to purchasing, not selling, cocaine.

But the original charge given by the court was correct and appropriate for the case. See *May v. State*, 179 Ga. App. 736 (1) (348 SE2d 61) (1986). And, given that there is no definition of "sale" in the relevant Code sections, the court was faced with the possibility of confusing the jury about whether such a definition must be in the statute as opposed to case law. We believe the court acted within its discretion by simply referring the jury back to the correct charge rather than giving a lengthy explanation of the absence of a word-for-word definition in the Code. And given that the charge was correct as given initially, we fail to see how the charge deprived Ware of any legitimate defense to his actions.

Unlike in *Quiroz*, the court's response in this case did not force the jury to answer its own question of law. See *Quiroz*, 291 Ga. App. at 427 (3). Rather, the jury in this case appeared to be confused about whether it had a proper definition of a sale; when the court referred the jury to the correct law that had already been given, it sufficiently informed the jury that it had the definition that it needed. The case of *Miller v. State*, 236 Ga. App. 825 (513 SE2d 27) (1999), is also distinguishable because in that case the court's recharge may have left the jury with an incomplete understanding of causation, a necessary element of the case.

3. Ware contends the court erred by ruling the State was not required to redact from a recording allegedly irrelevant and prejudicial statements he made during the course of the offense. He argues they put his character in issue even though he had not opened

the door to such testimony. But evidence of statements made by the defendant during the commission of the offense is admissible as part of the res gestae of the crime even if it puts the defendant's character in evidence. *McLendon v. State*, 258 Ga. App. 133, 134 (2) (572 SE2d 763) (2002).

 *Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JANUARY 26, 2011 —
RECONSIDERATION DENIED FEBRUARY 22, 2011 — 

 *Travis A. Williams, H. Bradford Morris, Jr.,* for appellant.
 *Lee Darragh, District Attorney, Wanda L. Vance, John D. West, Jr., Assistant District Attorneys,* for appellee.