**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 24, 2016**

# In the Court of Appeals of Georgia

A16A0162. WIGGINS v. THE STATE.

MCMILLIAN, Judge.

Rebecca Wiggins appealed the denial of her motion for new trial after a jury convicted her of sexual exploitation of children, aggravated sodomy, child molestation, and cruelty to children in the first degree.[1] In *Wiggins v. State*, 330 Ga. App. 205, 211 (c) (767 SE2d 798) (2014) ("*Wiggins I*"), this Court found that although the evidence at trial was sufficient to support Wiggins' convictions, the record failed to demonstrate that the trial judge applied the proper standard in reviewing her convictions on the general grounds. Accordingly, we vacated the judgment and remanded the case to the trial court to reconsider the issue under the

---

[1] The child molestation and cruelty to children counts were merged with the aggravated sodomy count for sentencing.

appropriate discretionary standard, and we declined to rule on Wiggins' remaining enumerations of error at that time. Id.

On remand, the trial court held a hearing and issued an order denying Wiggins' motion for new trial on the general grounds. Wiggins now appeals from that order, reasserting the enumerations of error not reached by this Court in *Wiggins I* and further asserting that on remand, the trial court failed to give the proper weight to the defense expert's testimony in reviewing the evidence on the general grounds.[2]

The charges in this case arose out of allegations that sometime between November 17, 2001 and November 16, 2003, Wiggins took sexually explicit pictures of the victim, and sometime between February 25, 2004 and September 30, 2004, she took the victim to David Ray's house and was present when Ray sodomized her. We summarized the evidence from Wiggins' trial in *Wiggins I*, and we need not restate

---

[2] To the extent that Wiggins also attempts to re-argue that the evidence at trial was insufficient to support her convictions, any such argument is barred by our prior ruling in *Wiggins I*, and we will not consider it. See OCGA § 9-11-60 (h)("[A]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."); *Pierce v. State*, 278 Ga. App. 162, 163 (1) (628 SE2d 235) (2006) ("This law of the case rule is not confined to civil cases, but applies also to rulings made by appellate courts in criminal cases.") (citation omitted). See also *Roulain v. Martin*, 266 Ga. 353, 354 (466 SE2d 837) (1996).

the evidence here. However, we note that the victim[3] testified that on a number of occasions, Wiggins took her to Ray's house, bathed her in a bathtub, took her to the room where Ray was waiting, stayed in the room while Ray sexually assaulted her, and then accepted payment from Ray afterwards.[4]

1. In her first enumeration, Wiggins asserts that the trial court erred in denying her motion in limine to prevent testimony and evidence showing that she had been a victim of molestation when she was a child.

Wiggins' trial counsel ("Defense Counsel") made an oral motion in limine at trial to exclude any evidence alleging that Wiggins was the prior victim of sexual assault after the prosecution stated that it wanted to elicit evidence that Wiggins told the victim that she had been molested by her father when she was a child. Defense Counsel argued that such evidence placed her client's character into evidence, was highly prejudicial, and was hearsay. The prosecutor argued, however, that the evidence was not hearsay because it was a statement made by Wiggins as a part of the

---

[3] The victim was 11 years old at the time she first made the allegations against Ray in this case. *Wiggins I*, 330 Ga. App. at 207.

[4] We note that Ray committed suicide on April 4, 2009 after police executed a search warrant on his home in connection with the victim's allegations, *Wiggins I*, 330 Ga. App. at 208, and thus he was not tried in connection with these crimes.

3

crime and that the evidence was admissible because it went to the issues of Wiggins' intent, knowledge, and motive.

The trial court denied the motion in limine, and the victim later testified that when Wiggins took her to Ray's house, she would talk to her about "what happened to her when she was little, like what her dad molested her with and things like that." The victim said that Wiggins told her that she was telling her these things "[t]o make me feel comfortable, to make me feel like it was right to do, right for me to do what he was doing to me." Melissa Dotterweich, the State's expert witness,[5] a therapist who worked with the victim, testified that during their sessions, the victim went into detail about what Wiggins had told her, including that her father had molested her when she was young. Defense Counsel renewed her prior objections to this evidence, but the trial court overruled them.

Generally, appellate courts review a trial court's decision on the admission of evidence for an abuse of discretion. See *Moore v. State*, 295 Ga. 709, 712 (2) (763 SE2d 670) (2014). And "[w]here[, as here,] the evidence at a hearing on a motion in limine is uncontroverted, and no issue exists regarding the credibility of witnesses,

---

[5] The trial court qualified Dotterweich as an expert "in the field of child sexual abuse and the disclosure process," including forensic interviewing.

we review the trial court's ruling to ensure that there was a substantial basis for it. The trial court's application of the law to the undisputed facts is subject to de novo review." (Citation omitted.) *State v. Barnard*, 321 Ga. App. 20, 20 (740 SE2d 837) (2013).

The evidence at issue concerned statements made by Wiggins as she took the victim to Ray's house where he performed sexual acts upon the child. Former OCGA § 24-3-3, which was applicable at the time of Wiggins' trial,[6] provided that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." And "[u]nder longstanding Georgia law, all the acts and circumstances surrounding and constituting the res gestae are admissible, despite the fact that they may reflect poorly on a defendant's character." *Baughns v. State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016). Therefore, "evidence of statements made by the defendant during the commission of the offense is admissible as part of the res gestae of the crime even if it puts the defendant's character in evidence." *Ware v. State*, 308 Ga. App. 24, 28 (3) (707 SE2d 111) (2011). Accordingly, pretermitting

---

[6] Because the trial in this case was held before January 1, 2013, we apply Georgia's old Evidence Code to the evidentiary issues raised on appeal. See *Bragg v. State*, 295 Ga. 676, 677 (2), n.3 (763 SE2d 476) (2014).

whether evidence showing that the defendant was herself previously the victim of a sexual crime may be considered evidence of bad character, we find that Wiggins' statements about her own abuse were admissible as part of the res gestae of the crimes.

Moreover, the evidence was relevant to the issue of Wiggins' knowledge and intent in taking the child to Ray's house. "Evidence which is relevant and responsive but which minimally places the character of the defendant into issue, is nevertheless admissible where the relevance of the testimony outweighs any prejudice it may cause. Relevant evidence is not rendered inadmissible because it incidentally puts the defendant's character into issue." (Citation omitted.) *Moore v. State*, 295 Ga. 709, 714 (3) (763 SE2d 670) (2014). See also *Kendrick v. State*, 156 Ga. App. 27, 28 (274 SE2d 78) (1980) ("Evidence which incidentally may place a criminal defendant's character in issue is admissible if independently relevant, such as to show knowledge, motive, plans, intent, scheme or identity.").

Here, Wiggins' statements to the victim showed her intent in bringing the victim to Ray and her knowledge of what was going to happen when they got there. Under the facts of this case, therefore, we find no error in the admission of Wiggins' statements to the victim. See, e.g., *Young v. State*, 290 Ga. 392, 398-99 (8) (721 SE2d

6

855) (2012) (evidence that defendant admitted to police that he sold crack cocaine was admissible because it was relevant to motive for crime of murder, even though it incidentally put defendant's character into issue).

2. Wiggins next argues that the trial court erred in overruling Defense Counsel's objections to the prosecutor's leading questions during the direct examination of the victim.

"A question is leading when it is so framed as to suggest to the witness the answer which is desired; on the other hand, a question not suggesting the desired answer is not leading where it inquires only into a single fact." (Citations and punctuation omitted.) *Milner v. State*, 258 Ga. App. 425, 429 (1) (574 SE2d 457) (2002). "Thus, a question is not open to the objection that it is leading when it does not suggest the answer desired." (Citations and punctuation omitted.) *Burden v. State*, 332 Ga. App. 811, 812 (1) (775 SE2d 183) (2015).

Wiggins identified the following questions as leading:

– Now, would she actually hold your hand during this time?

– Now, did he ever get his private part inside of your vagina?[7]

---

[7] Wiggins also asserts that the prosecutor led the victim when he asked, "When Rebecca took you there, before you would go over there to David Ray's house, would she talk to you about stuff to try to make you feel better?" However, Defense Counsel

However, because each of these questions inquired into a single fact and did not suggest the answer desired, the questions were not leading. Thus, the trial court did not abuse its discretion in overruling Defense Counsel's objections. See *Burden*, 332 Ga. App. at 812 (1) (prosecutor did not lead witness by asking, "Was any money demanded of you?"); *Wright v. State*, 319 Ga. App. 723, 727 (2) (a) (738 SE2d 310) (2013) (trial court did not abuse discretion by allowing prosecutor to ask 14-year-old witness, "Did you see the defendant with a gun?").

3. Wiggins also asserts that the trial court erred in denying her motion for mistrial based on juror misconduct.

Following a break in Dotterweich's testimony, the prosecutor notified the trial judge that he had received information that one of the jurors had spoken with the witness during the break. Dotterweich was called to testify about the incident outside the jury's presence, and she stated that one of the female jurors told her that she was "doing a great job," to which she replied, "thank you." The juror was with two other women jurors when this exchange occurred, and the victim/witness coordinator from

raised no objection to this question. "In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (Citation and punctuation omitted.) *Bennett v. State*, 334 Ga. App. 381, 383 (1) (a) (779 SE2d 420) (2015).

8

the district attorney's office, who was also present, told the juror she could not talk to a witness.

Based on this evidence, Defense Counsel asked to question the juror involved and further requested that the juror be removed or a mistrial be declared for juror misconduct. The trial court denied the request for a mistrial but stated that it would instruct the jury on the issue. After the trial court told the jury that it had received information that a juror had violated the court's repeated instructions not to discuss the case with anyone, the court cautioned the jurors to follow his instructions to the letter, reminded them that the case was not over, and instructed them that they should not consider the case until they returned to the jury room at the close of the evidence.

The next day, Defense Counsel again moved for a mistrial based on this incident and again requested that she be allowed to question the jurors. The victim/witness coordinator was then called to identify the jurors involved in the incident, and those jurors were questioned.

Juror Lacy was identified as the juror who made the comment. After apologizing to the court, Juror Lacy said that she told Dotterweich "thank you," because the expert had helped her understand "what was going on." Juror Lacy stated that two other jurors were there at the time, and when a lady told her "no

9

conversation," they got on the elevator and went to lunch. She also said that after the trial court raised the issue, she told the other jurors that she had spoken with Dotterweich and said, "thank you." The jurors then discussed the trial court's instructions not to talk to anyone, and Juror Lacy apologized to them. The trial judge asked Juror Lacy if she understood his directions about not discussing the case and would follow them. She replied in the affirmative. And in response to the court's questions, Juror Lacy indicated that she believed that she could be a fair and impartial juror and that she would keep an open mind until after the conclusion of the evidence, the closing arguments of counsel, and the trial court's jury charge.

Juror McClure was questioned next, and she stated that she had heard Juror Lacy tell Dotterweich, "thank you," and another lady tell Juror Lacy that she could not talk to the witness. Juror McClure stated that she had no further conversations with any jurors about the matter and that she had not talked to the witness. Juror McClure stated that she understood the trial court's instructions, that she believed that she could be fair and impartial, and that she could keep an open mind until after the close of the evidence, the arguments of counsel, and the court's instructions.

The third juror, Juror Atkins, stated that she did not hear Juror Lacy speak to the witness, nor did she hear the witness say anything because she was "digging

10

around" in her purse. However, she heard someone "yell out" to Juror Lacy that she was not allowed to speak to the witnesses and then heard Juror Lacy say "sorry." Juror Atkins also said Juror Lacy had identified herself to the other jurors as the subject of the trial court's inquiry and apologized to them. But she said that the jurors had only talked among themselves about following the trial court's instructions not to discuss the case.

Following this questioning, Defense Counsel again moved for a mistrial, or, in the alternative, to keep the jury intact but remove Juror Lacy from the deliberative panel at the end of the case and replace her with an alternate. The trial court denied the motion for a mistrial, but granted the defense motion to replace Juror Lacy at the close of the evidence.

On appeal, Wiggins asserts the trial court erred in not asking Juror Atkins if she could remain fair and impartial and in not investigating "how it might affect the jury as a whole." "Whether a mistrial is warranted is a question committed to the sound discretion of the trial court, and when an appeal is taken from the denial of a motion for mistrial, we consider only whether the court below abused its discretion." (Citations omitted.) *Brown v. State*, 314 Ga. App. 198, 203 (3) (723 SE2d 520) (2012).

11

Wiggins "was entitled to be tried by a jury untainted by improper influence, and improper communication with a juror raises a presumption of prejudice to the defendant, which the State must rebut beyond a reasonable doubt." *Russell v. State*, 293 Ga. 526, 529 (3) (748 SE2d 393) (2013). However, the presumption "sometimes can be rebutted simply by a showing that the substance of the communications had nothing to do with the case and otherwise was unlikely to influence the jurors in their deliberations and verdict." *Brown*, 314 Ga. App. at 203 (3). Moreover, "[t]o upset a jury verdict, the improper communication must have been so prejudicial that the verdict is deemed inherently lacking in due process." (Citation and punctuation omitted.) *Collins v. State*, 290 Ga. 505, 507 (3) (722 SE2d 719) (2012).

Here, although the communication involved the case, there was ample evidence to support the trial court's conclusion that Wiggins suffered no prejudice as a result. Juror Lacy and Juror McClure each stated that this communication would not affect her ability to remain fair and impartial. Although the trial court did not specifically question Juror Atkins about her ability to remain impartial, the evidence supported a finding that she was not tainted by the exchange as she did not hear it. Further, the remainder of the jury was told only that Juror Lacy had thanked Dotterweich and they did not discuss the matter further. Additionally, despite Juror Lacy's statements that

12

she could remain impartial, the trial court nevertheless removed her from jury service following the final charge to the jury, as Defense Counsel had requested.

Under these circumstances, the trial court was authorized to find beyond a reasonable doubt that Juror Lacy's contact with the State's expert caused no prejudice to Wiggins. See *Scott v. State*, 332 Ga. App. 559, 562 (1) (774 SE2d 137) (2015). Accordingly, we find no abuse of discretion in the trial court's denial of Wiggins' motion for mistrial on the ground of juror misconduct.

4. Wiggins further contends that the trial court erred in overruling her objections to testimony by Dotterweich that bolstered the victim's testimony and went to the ultimate issue in the case.

Wiggins first cites the following testimony:

Q.  And all the kids that you see in therapy and counseling, these are children at your place who have been sexually abuse[d,] correct?

A.  Correct. I don't see clients who have not made a disclosure in the interview process. There has to have been some sort of disclosure made and the detectives feel that it's a credible disclosure.

("First Incident"). Defense Counsel objected to this testimony, stating, "Objection, Your Honor, as to what the detective – what the detective surmises before it's being

13

–." The trial court then interrupted to overrule the objection "in this context." The basis of Wiggins' objection is unclear from this exchange. And although the trial court issued a ruling, the basis for that ruling is also unclear.

Wiggins also cites the following exchange during Dotterweich's testimony:

A. It's not uncommon for offenders if they have molested one sister to not try – at least try to molest the other child. So, I was just exploring, not giving information, and that is –

Q. Is that important through therapy to get a history, an accurate history from a child as to what they have actually gone through?

("Second Incident"). Although Defense Counsel raised no contemporaneous objection to this exchange, shortly thereafter she requested a sidebar conference. That conference was off the record, but Defense Counsel was later given the opportunity to place on the record the objections she raised at that time. Defense Counsel stated that she had objected because Dotterweich's testimony was bolstering and went to the ultimate issue in the case.

At the time of Wiggins' trial, former OCGA § 24-9-80 provided that "[t]he credibility of a witness is a matter to be determined by the jury under proper instructions from the court." Thus, "[a]n expert witness may not bolster the testimony

14

of a victim by opining as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror." (Citation and punctuation omitted.) *Thomas v. State*, 318 Ga. App. 849, 855 (4) (b) (734 SE2d 823) (2012).

Applying these principles, we examine the First Incident "in the context in which [the testimony] was given." (Citation and punctuation omitted.) *Strickland v. State*, 311 Ga. App. 400, 403 (2) (a) (715 SE2d 798) (2011). See also *Branesky v. State*, 262 Ga. App. 33, 36 (3) (a) (584 SE2d 669) (2003); *Brownlow v. State*, 248 Ga. App. 366, 369 (2) (b) (544 SE2d 472) (2001). Prior to the First Incident, Dotterweich was explaining the differences and the interrelationship between forensic interviews and therapy in the "gradual process" of a child's disclosure of sexual abuse. When the prosecutor asked whether the children she sees in therapy are kids who have been sexually abused, Dotterweich answered in the affirmative, explaining that they are children who have made "some sort of disclosure" of sexual abuse that the police found credible. After the trial court overruled Wiggins' objection, Dotterweich then further explained that in such cases, the director of the child advocacy center where Dotterweich worked would talk to the child's parents and recommend therapy and counseling.

15

Dotterweich's testimony did not speak to the credibility of the victim in this case, but only to the criteria used for recommending therapy to children who make an outcry of sexual abuse. Because "[h]er testimony was not a clear comment on [the victim's] credibility as to her allegations of molestation" in this case, it was not improper bolstering. (Citation and punctuation omitted.) *Strickland*, 311 Ga. App. at 403 (2) (a) (detective's testimony that he ended interview of child and referred her to a child advocacy center when he "ascertained that a molestation incident occurred" was not improper bolstering but rather an explanation as to why he ended the interview); *Brownlow*, 248 Ga. App. at 369 (2) (b) (considering expert's testimony "[i]n its context, given the question and the testimony both before and after the language at issue" and holding that the testimony was "most fairly seen as an attempt to explain child abuse accommodation syndrome to the jury rather than an impermissible opinion on an ultimate issue"). Accordingly, the trial court did not abuse its discretion in overruling the objection to the First Incident.

Similarly, we find that the testimony in the Second Incident was neither bolstering nor did it go to the ultimate issue in the case. Considering the testimony in its context, Dotterweich testified that she received information that Ray had abused the victim's sister before the victim disclosed that she had been abused by Ray.

16

Dotterweich subsequently told the victim that her sister had disclosed "some things" about Ray, without disclosing that the "things" were sexual in nature, and asked the victim to tell her about Ray. Dotterweich did not go into further detail because she was not sure if the victim knew anything about Ray's contact with her sister. Nevertheless, she asked the victim about Ray because it was not uncommon that if an individual had molested one sister, the individual might molest another sister. Thus, this testimony provided an explanation as to why she asked the child about Ray and did not go to the ultimate issue of whether Ray had molested the victim in this case.

Therefore, we find no abuse of discretion by the trial court in overruling Defense Counsel's objections to the cited testimony.

5. Wiggins additionally argues that the trial court erred in allowing the State to play taped jailhouse phone calls recorded after the trial began between Wiggins and Jason Blanpied (the "jailhouse tapes"), neither of whom testified at trial, on the grounds that their admission violated the marital privilege.[8] Although Defense

_____

[8] Wiggins also asserts that the jailhouse tapes constituted inadmissible hearsay and infringed on her Fifth and Sixth Amendment rights, as well as her rights to confront the witnesses against her under the Georgia Constitution. However, Wiggins failed to point us to any objections she raised at trial on these grounds, and thus any such arguments are waived. *Bennett*, 334 Ga. App. at 383 (1) (a). She additionally

Counsel did not raise a formal objection on the ground of marital privilege, the parties and the trial court discussed whether the evidence would violate the privilege, and we will address Wiggins' argument in this regard.[9]

In Georgia, confidential communications between a husband and wife are privileged. See former OCGA §§ 24-9-21 (1); 24-9-23. As the party seeking to invoke the marital privilege, Wiggins has the burden of proving it applies to the jailhouse tapes. See *Brown v. State*, 199 Ga. App. 188, 189 (1) (404 SE2d 469) (1991). See also *Frazier v. State*, 219 Ga. App. 768, 770 (1) (467 SE2d 338) (1995). In addition, the decision of the trial court as to the fact question of whether a valid, legal marriage existed "should not be disturbed on appeal if there is any evidence to

---

asserts that the jailhouse tapes improperly injected her character into evidence. Although Wiggins argued below that the evidence was intended to cast her in a bad light, she fails to provide any argument or authority on appeal in support of this or the other objections noted above. Accordingly, her arguments as to these objections must be deemed abandoned. See Court of Appeals Rule 25 (c) (2); *Williams v. State*, 323 Ga. App. 88, 89 (2) (a) (746 SE2d 913) (2013).

[9] Although the trial court did not specifically rule on the invocation of the marital privilege, it denied Wiggins' objections and allowed portions of the tapes to be played.

18

support its finding." *Jordan v. State*, 267 Ga. 442, 446 (2) (480 SE2d 18) (1997). See also *Conyers v. State*, 249 Ga. 438, 441 (3) (291 SE2d 709) (1982).[10]

Pretermitting whether the privilege could have been properly asserted here where the conversations were recorded after notice to the parties, we find that there was sufficient evidence to support the trial court's implicit finding that no legal marriage existed. Although at trial, Defense Counsel asserted that Blanpied was Wiggins' husband and that they were married on October 31, 2008, Wiggins has failed to point us to any evidence of record to support these assertions. In fact, Defense Counsel stated at one point that she did not have to prove the fact of their marriage. And although Wiggins testified at the hearing on the motion for new trial, she never testified that Blanpied and she were married. Moreover, two State witnesses gave testimony at trial suggesting that Wiggins and Blanpied were not married. An investigator for the prosecutor's office stated that she spoke with Blanpied on the phone, and she recalled that during the conversation, he made a reference to his "fiancee." And another witness for the State, who had lived with Wiggins around the time of the incidents in this case, described Blanpied as Wiggins' "boyfriend" and

---

[10] Although this principle was enunciated in connection with an invocation of the privilege by common-law spouses, we find no reason to apply a different standard when the existence of a legal marriage is challenged.

19

stated that as far as she knew, Wiggins and Blanpied were not legally married, although she admitted she had not talked to them in several years.

Accordingly, we find that Wiggins failed to establish that the admission of the jailhouse tapes violated the marital privilege.

6. Wiggins also contends that the trial court erred in denying a second motion for mistrial on the ground that Defense Counsel was rendered ineffective when she became the focus of alleged criminal conduct during the trial.

Although we review this ruling for an abuse of discretion, *Brown v. State*, 314 Ga. App. at 203 (3), to address Wiggins' argument, we also must consider whether she has proven that her Defense Counsel was rendered ineffective at trial as asserted in the motion for mistrial. In considering a claim of ineffective assistance of counsel,

> we apply the two-prong test for determining the validity of a claim of ineffectiveness of counsel established in *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), which asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency. If the defendant cannot satisfy either of the two prongs of the *Strickland* test, his ineffective assistance claim fails.

20

(Citation omitted.) *Janasik v. State*, 323 Ga. App. 545, 548 (2) (746 SE2d 208) (2013). "This burden, although not impossible to carry, is a heavy one," *Young v. State*, 292 Ga. 443, 445 (3) (738 SE2d 575) (2013), because "[w]hen reviewing ineffective assistance of counsel claims, this Court applies a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." (Citation and punctuation omitted.) *Williams v. State*, 298 Ga. 208, 219 (9) (779 SE2d 304) (2015). Thus, "[t]o show that the performance of [her] lawyer was deficient, [Wiggins] must prove that [her] lawyer performed [her] duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms." *Young*, 292 Ga. at 445 (3).

When the prosecutor first informed the trial court that the jailhouse tapes contained evidence suggesting that Defense Counsel had instructed Blanpied to leave Georgia so that the State could not call him as a witness,[11] the trial judge said that based on his research, such actions could constitute the common law crime of obstruction of justice. The trial court later noted that the prosecution's description of those tapes raised "a serious accusation," implicating a criminal charge. The next day,

---

[11] Blanpied, who lived in Texas, had been listed as a possible witness by Defense Counsel. Blanpied apparently had traveled to Georgia for the trial, visited with Wiggins at the jail, and then left the state without appearing at trial.

Defense Counsel filed a written motion for mistrial, asserting that the prosecution's request to play the tapes and his allegations of their contents was designed to inhibit Defense Counsel's cross-examination of the State's witnesses, rendering her ineffective, as well as to create a conflict of interest between Wiggins and Defense Counsel. The trial judge denied Defense Counsel's motion for mistrial stating that from his perspective, Defense Counsel had been very zealous in her representation of Wiggins and was very much in control and that he did not believe that she was providing ineffective representation to her client.

At the hearing on the motion for new trial, Defense Counsel explained that when the prosecutor said that he was investigating her during the trial, "everything went off the rails." She stated that she spent that afternoon during the trial on her phone texting to seek advice about her own situation and further asserted that she was unable to prepare for the next day of trial because she was listening to the jailhouse tapes and addressing the issue of whether charges would be filed against her.

However, Defense Counsel was unable to point to any instance where she rendered inadequate representation to her client[12] and stated that she proceeded with

---

[12] Additionally, Defense Counsel conceded that listening to the jailhouse tapes also served as preparation for the trial since the State was seeking to introduce portions of the tapes into evidence.

her plan for the defense "for the most part" during the course of the trial. Wiggins also failed to cite any incident of allegedly deficient performance at the hearing on the motion for new trial.[13]

Although the evidence and Wiggins' arguments indicate that Defense Counsel was concerned about and distracted by the possibility that she might be investigated in connection with the jailhouse tapes, as our Supreme Court has explained, "it is the conduct of the lawyer, not his thinking, that we assess for reasonableness, even though the thinking of the lawyer may inform the reasonableness of his conduct." (Emphasis omitted.) *Powell v. State*, 291 Ga. 743,748 (2) (b), n.2 (733 SE2d 294) (2012). See also *Shields v. State*, 307 Ga. App. 830, 831-32 (1) (a) (706 SE2d 187) (2011) ("[O]ur inquiry properly is focused on what the lawyer did or did not do, not what he thought or did not think."). Thus,

---

[13] Although in a footnote in her appellate brief, Wiggins points to one instance where she contends her counsel's performance was deficient, she failed to cite this incident in the trial court below, and thus any argument in that regard is waived. As our Supreme Court has held, claims of ineffective assistance of counsel must be raised "*before appeal* if the opportunity to do so is available; that the ability to raise the issue on motion for new trial represents such an opportunity; and that the failure to seize that opportunity is a procedural bar to raising the issue at a later time." (Citation omitted; emphasis in original.) *Lewis v. State*, 291 Ga. 273, 281 (7) (731 SE2d 51) (2012).

[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

*Strickland*, 466 U.S. at 690 (III) (A). See also *Harrington v. Richter*, 562 U.S. 86, 110 (IV) (A) (1) (131 SCt 770, 178 LE2d 624) (2011) ( "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."). Accordingly, Wiggins has failed to meet her burden of showing that Defense Counsel's performance was objectively deficient in light of the circumstances and prevailing professional norms.

And, in fact, the record demonstrates that following the initial discussion of the jailhouse tapes and the suggestion of possible criminal liability, Defense Counsel, inter alia, prepared and argued her motion for mistrial; argued against the introduction of the jailhouse tapes; raised numerous objections during the prosecution's examination of witnesses and its attempts to introduce evidence; conducted cross-examination and/or re-cross-examination of nine witnesses for the State; reasserted her motions for mistrial and made a motion for directed verdict at the close of the

24

State's case; and presented evidence from three witnesses on behalf of the defense. She also participated in the charge conference; argued about the procedure for releasing Juror Lacy and seating the alternate; and gave her closing argument to the jury. Wiggins raised no timely assertion that her counsel's performance was deficient in connection with these or any other matters.

Therefore, because Wiggins failed to meet the first prong of the *Strickland* test, we need not address the second prong, and we find that Wiggins has failed to show that the situation involving the jailhouse tapes rendered her counsel ineffective.

Likewise, we find that Wiggins has failed to establish the existence of any conflict that adversely affected Defense Counsel's performance. Any such conflict of interest "must be palpable and have a substantial basis in fact. A theoretical or speculative conflict will not impugn a conviction or sentence which is supported by competent evidence." (Citation and punctuation omitted.) *Henry v. State*, 269 Ga. 851, 854 (3) (507 SE2d 419) (1998).

Accordingly, we cannot say that the trial court abused its discretion in denying the motion for mistrial on this ground.

7. Wiggins also argues that Defense Counsel provided ineffective assistance of counsel by failing to understand and to communicate the maximum penalties to the

defendant. Wiggins did not assert this argument in her motion for new trial or her two amendments to this motion. However, at the hearing on the motion, her appellate counsel elicited pertinent testimony on the issue and argued that Defense Counsel failed to inform Wiggins of the maximum penalty she faced on each count and without such information she could not make an intelligent decision whether to accept the State's plea offer.

As noted above, to prevail on this argument, Wiggins must establish both prongs of the *Strickland* test. See *Sutton v. State*, 295 Ga. 350, 354 (6) (759 SE2d 846) (2014). And "[a]bsent clear error and harm, we will affirm the trial court's finding that [Wiggins] did not receive ineffective assistance of counsel." (Punctuation and footnote omitted.) *Overstreet v. State*, 304 Ga. App. 275, 280 (6) (696 SE2d 114) (2010).

"Objective professional standards dictate that a defendant, absent extenuating circumstances, is entitled to be told that an offer to plead guilty has been made and to be advised of the consequences of the choices confronting him." *Lloyd v. State*, 258 Ga. 645, 648 (2) (a) (373 SE2d 1) (1988). Here, Wiggins does not argue that Defense Counsel failed to communicate any plea offers but instead argues that she failed to communicate the maximum penalties that she was facing. "In determining

26

whether a defendant has been prejudiced by counsel's failure to communicate [her] choices accurately, we must examine the facts of each case to determine whether there is at least an inference from the evidence that defendant would have accepted the offer as made or something similar." (Citation and punctuation omitted.) *Biggins v. State*, 322 Ga. App. 286, 290 (3) (a) (744 SE2d 811) (2013). "We also have recognized the self-serving nature of a defendant's post-conviction testimony regarding his intent with respect to a plea offer, and have required some further objective evidence that defendant would have accepted a plea offer." (Citations and punctuation omitted.) Id.

Wiggins testified that Defense Counsel never discussed the maximum penalties for her offenses and never told her that she could get a life sentence. She said she would have never turned down the State's plea offer if she had known she could get a life sentence. Nevertheless, Wiggins later conceded that it was possible that her attorney had told her she could get a life sentence. And Defense Counsel stated that although she did not recall the specific discussions, she reviewed the indictment with Wiggins and she informed Wiggins that she faced a maximum sentence of life on the aggravated sodomy charge. She also stated that Wiggins turned down the State's best

27

offer of fifteen years, to serve eight, because "she was very specific in that she wanted a five- or a three-year-to-serve deal. That was the most she wanted in the case."

In denying the motion for new trial on this ground, the trial court found that Defense Counsel had discussed the indictment and the fact that Wiggins could get a life sentence, and the evidence supports these findings.[14] Moreover, the trial court was not required to accept Wiggins' self-serving testimony that she would have accepted the plea offer if she had known she was facing a potential life sentence. See *Silvey v. State*, 335 Ga. App. 383, 394 (3) (a) (780 SE2d 708) (2015) ("[W]hen considering claims of ineffectiveness of counsel, the trial judge determines witness credibility and is not required to accept the defendant's version of events.") (citation and punctuation omitted). Wiggins offered no objective evidence in support of this assertion, and, in fact, the evidence showed that Wiggins was not interested in entering into any plea deal unless she only had to serve three to five years, an offer the State never made. Under these circumstances, the trial court was authorized to conclude that Wiggins'

---

[14] On appeal, Wiggins asserts that even if the evidence shows that she was aware that she could get a life sentence, she was never told that she could get life plus an additional sentence on the other charges. However, Wiggins failed to articulate this specific argument at the hearing on the motion for new trial, and in any event, her claim of ineffective assistance of counsel on such a ground would likewise fail under the prejudice prong of the *Strickland* test.

testimony regarding the plea offer was not credible and, therefore, that she failed to establish the prejudice prong of her ineffective assistance of counsel claim. See *Silvey*, 335 Ga. App. at 394 (3) (a); *Biggins*, 322 Ga. App. at 291 (3) (a); *Whitehead v. State*, 211 Ga. App. 121, 122 (438 SE2d 128) (1993).

Accordingly, the trial court's finding that Wiggins did not receive ineffective assistance of counsel is not clearly erroneous, and we will not disturb that finding on appeal.

8. In her only enumeration of error arising from the remand of the case, Wiggins asserts that the trial court abused its discretion in failing to give sufficient weight to the defense's expert. However, when a defendant seeks appellate review of "a trial court's refusal to grant a new trial on the general grounds . . . , [the appellate courts] can only review the case under the standard espoused in *Jackson v. Virginia*, [443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979)], to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict." (Citation and punctuation omitted.) *Lewis v. State*, 296 Ga. 259, 261 (3) (765 SE2d 911) (2014). As this Court has already determined that the evidence was sufficient to support the verdict under the *Jackson v. Virginia* standard, *Wiggins I*, 330 Ga. App. at 209-10 (a), (b), & (c), this enumeration is without merit.

29

*Judgment affirmed. Miller, P. J., concurs. McFadden, J., concurs fully and specially.*

A16A0162. WIGGINS v. THE STATE.

McFADDEN, Judge, concurring fully and specially.

I fully concur in the majority opinion. I write separately to make clear that the threat to prosecute defense counsel was unwarranted and gravely improper.

Although he had not subpoenaed Jason Blanpied the prosecutor promised in his opening statement that the jury would hear from Blanpied. Defense counsel had listed Blanpied as a possible witness. See OCGA § 17-16-8. But during the course of the trial, she made the strategic determination that his testimony would most likely be a net detriment to the defense and told him not to come to court. Blanpied apparently returned to his home in Texas, and the prosecutor found himself unable to keep some of the promises he had made to the jury. Rather than recognize that his own omissions were the cause of this embarrassment, he threatened to prosecute

defense counsel. Those threats began during the course of trial, apparently continued for a year and a half, and compelled her to retain counsel of her own. [1]

But although clothed in the power of the office of the district attorney, those threats were naked of legal justification. Defense counsel had not committed a criminal act.

The state has made no attempt to show that she had. Its appellate brief relies, correctly, on the *Strickland* standard and makes no effort to justify those threats. See *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d) (1984). Although those threats were discussed several times during the course of trial, my review of the appellate record has identified no effort by the prosecutor to show a legal justification for them. And defense counsel testified without contradiction at the new-trial hearing that she tried unsuccessfully to elicit a specific allegation from him.

It is not the responsibility of defense counsel to help the state present its case. The state had no right to rely on defense counsel's list of possible witnesses. See *Byron v. State*, 229 Ga. App. 795, 799 (6) (495 SE2d 123) (1997) (it was defendant's duty to ensure presence of his witnesses by issuance of subpoena). Defense counsel had the right not to call Blanpied to testify. See *Johnson v. State*, 232 Ga. App. 717,

---

[1]The attorney she retained is now the sitting district attorney.

2

719 (1) (b) (503 SE2d 603) (1998) (holding that state was not required to call witness whose name was on state's witness list because obtaining witnesses to aid in his defense was defendant's responsibility).

Contrary to the initial observation of the trial court[2] — who later correctly noted that the threatened prosecution of defense counsel was not before him — defense counsel had not committed a common law crime. "There are no common law crimes in this state; they are all statutory." *Gentry v. State*, 129 Ga. App. 819, 822 (3) (201 SE2d 679) (1973) (citation and punctuation omitted).

The controlling statute is OCGA § 16-10-93, which prohibits improperly influencing a witness. The parts of that statute that specify the prohibited conduct provide:

> (a) A person who, with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court, in any administrative proceeding, or before a grand jury, communicates, directly or indirectly, to such witness *any threat of injury or damage* to the person, property, or employment of the witness or to the person, property, or employment of any relative or associate of the witness or who *offers or delivers any benefit, reward, or consideration* to such witness or to a relative or associate of the witness shall, upon conviction

---

[2]Different judges presided over the trial and the hearing on the motion for new trial.

3

thereof, be punished by imprisonment for not less than one nor more than five years.

(b)(1) It shall be unlawful for any person knowingly to use *intimidation, physical force, or threats*; to persuade another person by *means of corruption* or to attempt to do so; or to engage in *misleading conduct* toward another person with intent to:

> (A) Influence, delay, or prevent the testimony of any person in an official proceeding;

> (B) Cause or induce any person to:

>> (i) Withhold testimony or a record, document, or other object from an official proceeding;

>> (ii) Alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

>> (iii) Evade legal process summoning that person to appear as a witness or to produce a record, document, or other object in an official proceeding; or

>> (iv) Be absent from an official proceeding to which such person has been summoned by legal process; or

4

> (C) Hinder, delay, or prevent the communication to a law enforcement officer, prosecuting attorney, or judge of this state of information relating to the commission or possible commission of a criminal offense or a violation of conditions of probation, parole, or release pending judicial proceedings.

(Emphasis added.) Obviously — even if defense counsel instructed Blanpied to leave the state, which she denied — her conduct did not involve any threat of injury or damage; benefit, reward, or consideration; intimidation, physical force, or threats; means of corruption; or misleading conduct.

But as the majority correctly holds, Wiggins cannot point to any instance in which defense counsel rendered inadequate representation at trial. And so she cannot satisfy the first prong of the *Strickland* standard. We therefore do not decide about the second prong. But as to the second prong it should be noted that

> [i]n *Strickland*, the Supreme Court identified three instances in which the defendant would be relieved of his burden to establish prejudice stemming from counsel's errors: (1) an actual or constructive denial of counsel, (2) government interference with defense counsel, and (3) counsel that labors under an actual conflict of interest that adversely affects his performance.

*State v. Heath*, 277 Ga. 337, 338 (588 SE2d 738) (2003).

5

Defense counsel has — as the state's appellate brief asserts without contradiction — extensive experience as a prosecutor, as a criminal defense attorney, and in child molestation cases. And the record supports the state's contention that its interference did not reduce her performance below — or anywhere close to — the *Strickland* standard.

But it does not follow from the inapplicability of *Strickland* that the prosecutor's interference with defense counsel was without consequence. Defense counsel testified that she spent hours, that ought to have been devoted to preparing her examinations and arguments, listening to recordings of "garbage jail calls" and consulting colleagues about her own defense. We cannot know how defense counsel might have sharpened her arguments or what connections she might have drawn between seemingly unrelated facts if the state had not interfered with her preparation.

Nor does the inapplicability of *Strickland* in any way justify use of the power of the office of the district attorney to try to intimidate defense counsel. Nor does it justify subjecting defense counsel to the anxiety and expense of dealing with the prospect of a specious prosecution.

A district attorney "may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul

6

ones." *Berger v. United States*, 295 U. S. 78, 88 (55 SCt 629, 79 LEd 1314) (1935);

*Medlock v. State*, 263 Ga. 246, 252 (1) (430 SE2d 754) (1993) (Fletcher, J.,

dissenting).