**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 10, 2015**

# In the Court of Appeals of Georgia

A15A1007. BENNETT v. THE STATE.

MCMILLIAN, Judge.

Keith Bennett appeals the trial court's denial of his motion for new trial following his conviction on October 24, 2013 for trafficking methamphetamine in a quantity of 200 or more grams, possession of methamphetamine with the intent to distribute, possession of clonazepam, possession of a firearm during the commission of a crime, and possession of a gun by a convicted felon. We affirm.

Viewed in the light most favorable to the verdict,[1] the evidence showed that on October 17, 2012, Kenny Pogue drove Bennett and Pogue's friend, Kelsey Lambert, in Pogue's vehicle to a prearranged methamphetamine transaction with Mark Pham. Pogue subsequently pled guilty to charges arising from this incident, and the State

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

called him as a witness against Bennett at trial. Although Pogue refused to answer most of the prosecutor's questions on direct examination, Pogue testified on cross-examination that Bennett had a gun and drugs when he got into Pogue's car. He said that the three individuals in the car combined their drugs into one bag and hid it under the dash because they were concerned that Pham would rob them of their drugs. He also said that Bennett rode with him to the meeting with Pham to make sure that Pogue repaid money he owed to one of Bennett's friends from a prior drug deal.

The State also introduced evidence of Pogue's testimony during his guilty plea hearing. During that testimony, Pogue stated that before the meeting, Bennett, Lambert, and he combined their supply of drugs into one bag, and Pogue put the bag under the dash of his car. They then met with one of Bennett's friends, who put another bag of drugs under the hood of Pogue's car. Because Bennett's friend did not trust Pogue, Bennett accompanied Pogue to keep an eye on his friend's drugs and to make sure that Pogue brought the money back to his friend. Lambert testified that before arriving at the arranged location, Pogue stopped the car and pulled two guns out from underneath his seat, handing one gun to Bennett and keeping the other one himself.

Unbeknownst to the three people in the car, Pham was a confidential informant, who was working with the Hall County Multi-Agency Narcotics Squad to set up a controlled buy from Pogue. When the three approached the vacant house where the meeting was to take place and spotted police officers, Pogue and Bennett threw their guns out of the car windows. The officers subsequently retrieved the two guns, along with a small bag of pills and a small baggie of methamphetamine from the area where they had observed items thrown from the car. After Pogue, Bennett, and Lambert were taken into custody, the officers conducted a search of the vehicle. A bag of methamphetamine weighing 175.05 grams was discovered under the dashboard of the car. The officers also found a magnetic box under the car's hood containing 361.31 grams of methamphetamine, marijuana, oxycodone pills, a set of scales, and a ledger. Police further discovered $7,500 in cash in the car's glove compartment.

During a taped interview with the police that was played during the trial, Bennett admitted that he suspected Pogue was a drug dealer and that he agreed to ride with him to a vacant house that night to meet a man who owed Pogue money. Bennett decided to ride with Pogue because Pogue owed money to Bennett's friend, who had asked Bennett to make sure nothing happened to Pogue. Bennett accepted a gun from Pogue in the car, which Pogue described as "insurance." Bennett suspected that there

3

might be trouble and was scared when Pogue handed him the gun. Bennett denied actual knowledge that there were drugs in the car. However, when an officer recited the events of that night, including that Bennett knew that Pogue was a drug dealer, that Pogue was "probably carrying dope," and that they were collecting money for a drug debt, he asked Bennett to tell him if that basically was what happened that night. Bennett replied, "That is basically what happened," and he did not correct any portion of the officer's recitation.

1. We first address Bennett's assertions that the trial court impermissibly allowed unsworn testimony from Pogue and improperly admitted Pogue's prior testimony from his guilty plea hearing to impeach him.

When the State called Pogue to the stand, he refused to take the oath and announced that he would not testify because he did not want to "get stabbed" in prison for his testimony at trial. In response, Bennett's trial counsel asked that Pogue not testify. After the lawyers conferred with the trial judge, the prosecutor tried again to administer the oath to Pogue. But he again refused, and the prosecutor requested to proceed with unsworn testimony. The trial court granted the request without objection from Bennett's counsel. And trial counsel later cross-examined Pogue, eliciting further unsworn testimony.

4

(a) Georgia law provides that "[b]efore testifying, every witness shall be required to declare that he or she will testify truthfully by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so." OCGA § 24-6-603 (a). However, it is well settled that the failure to object to unsworn testimony waives the issue for appeal. See *Brown v. State*, 290 Ga. 321, 322 (4) (720 SE2d 617) (2012); *Chapman v. State*, 257 Ga. 19, 20 (3) (354 SE2d 149) (1987); *Sweeting v. State*, 291 Ga. App. 693, 694 (662 SE2d 785) (2008); *Hilson v. State*, 204 Ga. App. 200, 203 (1) (418 SE2d 784) (1992). Although Bennett asserts on appeal that his counsel objected to Pogue's testimony, the cited portions of the record failed to preserve Bennett's argument for review by this Court. After Pogue initially refused to take the oath, Bennett's attorney stated, "I ask that he not testify," without articulating the reason for the request or the grounds for any objection. Further, he raised no objection at the time the State requested that Pogue be allowed to provide unsworn testimony. Although Bennett's attorney objected on relevance grounds to questioning about Pogue's being "jumped" while in prison, Bennett has not cited us to any objection raised by his counsel to the fact that Pogue gave unsworn testimony. "[I]n order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be

5

made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (Citation and punctuation omitted.) *Hites v. State*, 296 Ga. 528, 530 (2) (769 SE2d 364) (2015).

Accordingly, we find that Bennett waived any objection to Pogue's unsworn testimony.

(b) Bennett also argues that the trial court erred in allowing the State to introduce Pogue's testimony from his guilty plea hearing. During the State's direct examination, the prosecutor asked Pogue about the individual statements he made in his proffer at the guilty plea hearing, and he responded by stating "I don't know" or "I don't remember" to the State's questions. He gave similar answers when questioned about his prior statements to police. However, when Bennett's trial counsel cross-examined Pogue about his prior convictions, his prior statements to police, and the drugs and guns present the day of the crime, Pogue answered his questions. The trial court later allowed the State to call a victim advocate who was present at Pogue's guilty plea hearing to read the transcript of the proffer Pogue made at that time.

Prior to the enactment of the new Evidence Code,

6

a guilty plea of a joint offender [was] not admissible in evidence at the trial of another joint offender. This rule [did] not apply where the joint offender [was] present at trial and [testified] as a witness subject to cross-examination. Nor [did] it apply where the joint offender's guilty plea [was] admitted with instructions that it not be used as evidence of the defendant's guilt.

*Pinckney v. State*, 236 Ga. App. 74, 74-5 (510 SE2d 923) (1999). However, Bennett was tried in 2013, after the effective date of Georgia's new Evidence Code. See Ga. L. 2011, pp. 99, § 101 (new Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013). The *Pinckney* case, upon which Bennett relies, was decided under former OCGA § 24-3-52,[2] 236 Ga. App. at 75 (1), which was repealed with no directly corresponding provision under the new Code. See Ga. L. 2011, p. 99, § 2 But see Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 504 (3d ed. 2015) (suggesting that OCGA § 24-3-52 may have been subsumed within OCGA § 24-8-801 (d) (2) (E) regarding the admission of statements by co-conspirators made in furtherance of a conspiracy).

---

[2] That statute "provided, in toto, that '(t)he confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself.'" *Allen v. State*, 296 Ga. 785, 788 (5) (770 SE2d 824) (2015).

We need not determine whether the holding in *Pinckney* has current application in this case because Bennett failed to preserve the issue for appeal. When the State offered the transcript of the guilty plea into evidence as a prior inconsistent statement, Bennett's counsel objected to the admission of the transcript on procedural grounds, and the trial court refused to admit the transcript through Pogue's testimony. The next day, the State called the victim advocate who had attended the plea hearing, and, after argument, the trial court allowed her to read the transcript to the jury. Bennett's counsel apparently renewed his objection to the procedure as well as a prior objection on the grounds that reading the transcript would be "redundant and cumulative" to Pogue's cross-examination the previous day.[3] Because Bennett's counsel never raised any specific objection on the ground of Pogue's status as a joint offender as described in *Pinckney*, he waived the issue for appeal. See *Bailey v. State*, 273 Ga. 303, 306-07 (4) (540 SE2d 202) (2001).

2. Bennett also argues that the evidence presented at trial was insufficient to support his convictions because he asserts that only Pogue's testimony tied him to any of the drugs found in the car.

---

[3] The argument on this issue took place in the morning before the trial started for the day and apparently was not taken down by the court reporter.

On appeal, we do not weigh evidence or determine the credibility of the witnesses. Rather we consider whether, viewed in the light most favorable to the verdict, the evidence is sufficient for a rational trier of fact to find Bennett guilty of the crimes of which he was convicted beyond a reasonable doubt. *Clark v. State*, 296 Ga. 543, 545 (1) (769 SE2d 376) (2015).

Under Georgia's new Evidence Code, the testimony of a single accomplice is generally insufficient to support a felony conviction and must be corroborated with other evidence. OCGA § 24-14-8. This Code section is "virtually identical" to former OCGA § 24-4-8, and the Federal Rules of Evidence contain no comparable provision.[4] *Bradshaw v. State*, 296 Ga. 650, 653 (2) (769 SE2d 892) (2015). Accordingly, "we give the new accomplice provision the same meaning as the old one." Id. And Georgia courts have interpreted the accomplice provision to mean that "sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged." (Citation omitted.) *Clark*, 296 Ga. at 547 (1). See also *Odle v. State*, 331 Ga. App. 146, 150

---

[4] In fact, under the federal rules the "'uncorroborated testimony of an accomplice is sufficient to support a conviction in the Federal Courts if it is not on its face incredible or otherwise insubstantial.' *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991)." *Bradshaw*, 296 Ga. at 654.

(770 SE2d 256) (2015) (only slight evidence is required to corroborate an accomplice's testimony and the independent corroborating evidence need only justify an inference that the defendant is guilty). "And whether the State presents sufficient corroboration of the accomplice's testimony is peculiarly a matter for the jury to determine." (Citation and punctuation omitted.) *Hines v. State*, 320 Ga. App. 854, 857-58 (1) (740 SE2d 786) (2013).

Moreover,

[e]ven if a person does not directly commit the crime, a person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during and after the crime.

(Citations and punctuation omitted.) *Green v. State*, 298 Ga. App. 17, 20 (1) (679 SE2d 348) (2009). See also *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

In the instant case, Pogue's testimony incriminating Bennett was corroborated, inter alia, by evidence that Bennett was arrested as a passenger in a vehicle containing over 500 grams of methamphetamine, marijuana, clonazepam pills, a digital scale,

10

and a large amount of cash in a drug sting operation; by Bennett's own admissions that he suspected Pogue was a drug dealer, that he knew Pogue "probably" had drugs in the car, that he was in the car with Pogue to help him collect a drug debt, and that he was there to protect Pogue; and by Lambert's testimony that Bennett accepted a gun from Pogue and threw it out the window when he saw police. We find that this and other evidence at trial was sufficient to support Bennett's convictions beyond a reasonable doubt. See *Green*, 298 Ga. App. at 21 (accomplice's statements was sufficiently corroborated by evidence that a weapon was located under the defendant's feet and a black bag containing drug money was found within arm's reach of the defendant).

3. Bennett further asserts that a fatal variance exists between the indictment and the verdict reached by the jury with regard to the charge of trafficking in methamphetamine because the trial court charged the jury on trafficking in more than 200 grams of methamphetamine, in addition to charging them on trafficking in more than 400 grams of methamphetamine, as alleged in the indictment.

(a) Under OCGA § 16-13-31 (e),

[a]ny person who sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine, amphetamine, or

11

any mixture containing either methamphetamine or amphetamine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in methamphetamine or amphetamine.

The statute delineates three levels of punishment for trafficking in methamphetamine depending upon the quantity of methamphetamine involved. "If the quantity of methamphetamine, amphetamine, or a mixture containing either substance involved is 28 grams or more, but less than 200 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of ten years and shall pay a fine of $200,000.00" under subsection (e) (1). If that quantity "is 200 grams or more, but less than 400 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of 15 years and shall pay a fine of $300,000.00" under subsection (e) (2). And if the quantity "is 400 grams or more, the person shall be sentenced to a mandatory minimum term of imprisonment of 25 years and shall pay a fine of $1 million" under subsection (e) (3).

Bennett was charged with trafficking by knowingly possessing more than 400 grams of methamphetamine under OCGA § 16-13-31 (e) (3), and the evidence at trial showed that methamphetamine was found in Pogue's vehicle in two places, with 175.05 grams of methamphetamine in a bag under the dash of the car and 361.31

grams of methamphetamine in a black box under the hood of the car. During the charge conference, the State requested that, in addition to charging the jury with the amount specified under subsection (e) (3) of OCGA § 16-13-31, the trial court also charged the jury under subsections (e) (1) and (e) (2). Bennett's counsel did not object to the charge, but instead replied:

> If we do this, . . . we would be giving 400 grams as charged, 28 grams trafficking, simple possession if they can't make up their mind, and while you are at it, to be thorough, I guess over 200, which wouldn't make a lot of sense, honestly, but I guess you have to be complete, because we would say if we are going trafficking only, give us simple possession. I don't know if the 200 makes any sense, except for the fact that the co-defendant pled to 200, so in a sense of fairness, the jury may decide that that works. And since one bag was over 175 grams, add a little more, we could be guilty of over 200. A lot of [verdict] form to give [the jury], but if we are going to go 400 and 28 possession, we might as well –

The trial judge then interjected, "Yeah, if I'm going to give them one lesser, I guess I have to give all of the lessers. So then you are okay with that?" Bennett's counsel responded, "I don't love it, but if we're going to give one, we'll give them all." The jury ultimately convicted Bennett of "trafficking in methamphetamine (200 or more grams)," in lieu of the other alternative offenses. Bennett argues that this process

13

resulted in a fatal variance between the form of the indictment and his conviction. We disagree.

Georgia courts do not apply an overly technical analysis to a claim of fatal variance, but rather focus on the materiality of any discrepancy.

> The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense.

(Citation omitted.) *Green v. State*, 301 Ga. App. 343, 344 (687 SE2d 623) (2009). See also *DePalma v. State*, 225 Ga. 465, 469-70 (3) (169 SE2d 801) (1969).

We find that trafficking in methamphetamine in a quantity of 200 or more grams is a lesser included offense of trafficking in methamphetamine in a quantity of 400 or more grams, because proof of the former is necessarily included in the latter

(i.e., a defendant cannot possess 400 or more grams without possessing 200 or more grams).[5] And it is well settled that

> an indictment not only charges the defendant with the specified crime, it also embraces all lesser included offenses of the charged offense. An indictment places an accused on notice that he can be convicted of the crimes expressly charged as well as lesser crimes that are included in the charged offenses as a matter of law or fact. Indeed, if an offense is a lesser included offense as a matter of law or fact, an accused can be convicted of that offense.

(Citation omitted.) *Bryant v. State*, 320 Ga. App. 838, 842-43 (3) (740 SE2d 772) (2013). See also OCGA § 16-1-6 (1) ("An accused may be convicted of a crime included in a crime charged in the indictment or accusation. A crime is so included when . . . [i]t is established by proof of the same or less than all the facts . . . than is required to establish the commission of the crime charged"). Bennett was both

---

[5] Stated another way, under the required evidence test set out in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006), because trafficking in 200 or more grams does not require proof of any element that trafficking in 400 or more grams does not also require, the former is a lesser included offense of the latter. See *Jernigan v. State*, 333 Ga. App. 339, 343 (3) (775 SE2d 791) (2015) (under the *Drinkard* test, court examines "whether *each* offense requires proof of a fact which the other does not") (citation and punctuation omitted; emphasis supplied); *Stuart v. State*, 318 Ga. App. 839, 842-43 (734 SE2d 814) (2012) (*Drinkard* test applies to determine whether one offense is a lesser included offense of another).

charged with and convicted of trafficking in methamphetamine in some amount. The fact that the jury found him guilty of trafficking in a smaller amount of methamphetamine than the indictment alleged does not give rise to a fatal variance.

(b) Moreover, to the extent that Bennett is arguing that the trial court's charge on trafficking methamphetamine constituted plain error, we find that his counsel invited any error by agreeing to the charge and thus affirmatively waived appellate review for plain error. See *Hicks v. State*, 295 Ga. 268, 275 (2) (759 SE2d 509) (2014); *Shank v. State*, 290 Ga. 844, 845 (2) (725 SE2d 246) (2012); *Cheddersingh v. State*, 290 Ga. 680, 682-84 (2) (724 SE2d 366) (2012) (Affirmative waiver requires "deviation from a legal rule must have been intentionally relinquished or abandoned.") (citation and punctuation omitted).

Accordingly, we affirm the trial court's denial of Bennett's motion for new trial.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*