**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 29, 2026**

# In the Court of Appeals of Georgia

A25A1601. ELDRIDGE v. THE STATE.

HODGES, Judge.

Jason Eldridge was convicted of multiple crimes perpetrated on two elderly people, Floyd Calvin Lee and Rosa Lee (collectively "the Lees"; individually "Calvin" and "Rosa") and the neighbors who attempted to help the Lees. Eldridge appeals from the trial court's denial of his motion for new trial, arguing that the trial court plainly erred in the admission and consideration of victim-impact evidence at sentencing and that insufficient evidence supports his conviction for battery against one of the neighbors. For the reasons that follow, we affirm.

Viewed in the light most favorable to the prosecution,[1] the evidence adduced at trial shows that on the day of the crimes, May 6, 2020, Eldridge's then 11-year-old nephew was playing with a football at his grandparents' house when he heard something "hit the ground" in Eldridge's house, which was nearby. Eldridge emerged from his house and ran toward the nephew with "his hands up and his hair ... all messed up," saying "random words." The nephew testified that because Eldridge seemed out of his mind, the nephew ran into his grandparents' house, locked the door, and told his grandfather Eldridge was chasing him. Eldridge later admitted to using "illicit drugs[,]" specifically methamphetamine, which a laboratory report confirmed.

While sheltering in the house, the young nephew and the grandfather heard "a bunch of commotion" at the Lee home nearby. The grandfather also heard Eldridge's voice, and he and the nephew heard Rosa "screaming" and calling for help, as well as two gun shots.

The Lees' neighbors, father-and-son John and Brandon Carter (collectively, "the Carters"; individually, "John" and "Brandon"), were outside grilling burgers when they heard something that sounded like "a piece of wood hitting a tin barn."

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319(III)(B) (99 SCt 2781, 61 LE2d 560) (1979).

They heard a woman screaming and yelling for help and "somebody yelling motherf–ker this and motherf–ker that." Brandon grabbed his pistol and as he ran toward the sounds coming from the Lees' home, he could see a man with "his hands around an elderly woman's wrists . . . [and] she was trying to fight him off[.]" Brandon recognized the man as Eldridge, and screamed, "what's going on[?]" Eldridge ran away and got into a vehicle in the Lees' carport.

As the Carters approached, Eldridge kicked the car door open and climbed out, yelling, "I'm going to kill you motherf–kers" and "[y]ou better have brought a gun." Eldridge then went "berserk[,]"grabbed a trash can, and threw it at the Carters. Eldridge charged at John, hitting him in the jaw twice, throwing him off balance, and knocking off his glasses. Eldridge also grabbed Brandon's hand in an attempt to get the pistol. Brandon shifted the pistol to his other hand and shot Eldridge twice to "get him off[.]" Eldridge did not stagger; he just backed up a few yards and continued to scream that he was going to kill the Carters. The Carters yelled at him to get on the ground, but he did not, even though Brandon was attempting to hold him at gunpoint. Instead, Eldridge picked up a metal fence post and charged at the Carters, "yelling he was going to kill" them.

As Brandon moved around the carport after Eldridge, he saw Calvin, who was 86 years old, lying on the floor in the doorway between the outdoor patio and home's screened porch. Calvin was shaking, struggling to breathe, and bleeding heavily from his head. A bloody wooden 2x4 was nearby. Rosa, who was 82 years old, pointed her husband's walking stick at Eldridge, saying, "He killed him. He killed him." She told a neighbor that Eldridge had been in her home, trying to find the car keys so he could take Calvin's car.[2] Calvin later died from his injuries.

When police arrived at the scene, Eldridge, despite having been shot twice, was still brandishing the metal fence post at the Carters and threatening to kill them. Eldridge eventually followed officers' commands to put down the post and lie on the ground, at which point he was arrested.

Eldridge was charged pursuant to a 14-count indictment, and convicted on seven of those counts. Of the charges related to the Lees, the jury found Eldridge guilty of first-degree burglary of their home and of entering Calvin's automobile. The jury found Eldridge not guilty, however, of malice murder, two counts of felony

---

[2] Rosa had been diagnosed with dementia, memory loss, and Parkinson's disease. She did not testify at trial.

murder, and aggravated assault against Calvin; it also found him not guilty of two counts of exploitation and intimidation of a disabled adult, elder person, or resident.[3]

As to the charges related to crimes against the Carters, the jury found Eldridge guilty of two counts of aggravated assault and two counts of terroristic threats; it also found Eldridge guilty of the battery of John.

The trial court entered a total sentence of 72 years against Eldridge. The crimes which Eldridge was convicted of committing against the Lees accounted for 22 years of the sentence; the remaining 50 years were attributable to the crimes against the Carters. The sentence requires Eldridge to serve 65 years in confinement, with the remainder on probation.

1. Eldridge contends that the trial court plainly erred by allowing victim-impact testimony at sentencing related to offenses for which Eldridge was neither convicted nor sentenced, and for admitting that evidence without cross examination.[4] Based on

---

[3] The trial court directed a verdict of not guilty on a count of second-degree criminal damage to Calvin's vehicle.

[4] Eldridge acknowledges that his aggregate sentence is shorter than the statutorily permissible maximum, and is not void. See, e. g., *Crumbley v. State*, 261 Ga. 610, 611(1) (409 SE2d 517) (1991) ("A sentence is void if the court imposes punishment that the law does not allow.").

this contention of error, he seeks to have his sentence vacated and his case remanded for resentencing. We find no error.

(a) As an initial matter, Eldridge's enumeration focuses on two victim-impact statements or letters. One victim-impact letter was written by the Lees' son, and was read into the record by an unsworn employee of the district attorney's office. Defense counsel raised no objections. The other letter was not read into the record, although the State indicated that it could be. The trial court apparently read the letter to itself. Defense counsel affirmed that she had a copy of this letter and again raised no objections.

(b) Eldridge asserts for the first time on appeal that the trial court erred in allowing an unsworn employee of the district attorney's office to read one of the victim-impact statements into the record because there was no opportunity for cross examination of the Lees' son, who wrote the letter.[5] Eldridge also argues that there was no opportunity to cross examine the relative who wrote the letter that was not read into the record. We find no error.

OCGA § 17-10-1.2(a)(3) provides, in pertinent part,

---

[5] The family "[did not] feel they [could] make it through" reading the statement themselves.

Except as provided in paragraph (4) of this subsection . . . [victim-impact evidence] shall be subject to cross-examination. The admissibility of the testimony and evidence in support of such testimony shall be in the sole discretion of the judge and in any event shall be permitted only in such a manner as to allow for cross-examination by the defendant and to such a degree as not to unduly prejudice the defendant.[6]

First, "it is well settled that the failure to object to unsworn testimony waives the issue for appeal." *Bennett v. State*, 334 Ga. App. 381, 383(1)(a) (779 SE2d 420) (2015). Second, Eldridge's counsel also never sought to cross examine either of the letter writers. When asked if there was anything else to address, Eldridge's counsel twice said no. On appeal, Eldridge acknowledges the unavailability of ordinary appellate review, but asserts that he is entitled to plain error review.

To establish plain error, an appellant must identify an error that was not affirmatively waived, was clear and not open to reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial

---

[6] See also OCGA § 17-10-1.2(a)(4) (providing that upon a court finding, specific to the case and witness, that the witness would be unable to testify in person without exhibiting undue emotion or experiencing severe distress, a written statement may be submitted so long as the witness is subject to cross examination).

proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

*Tucker v. State*, 362 Ga. App. 489, 493-94(1) (869 SE2d 142) (2022) (citations and punctuation omitted); accord *Siders v. State*, 320 Ga. 367, 375(3)(b) n. 7 (907 SE2d 645) (2024). Our Supreme Court has defined the bounds of plain error review with respect to the admission of evidence:

> In Georgia, plain error review is limited to the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58(b), and, for cases tried after January 1, 2013, with regard to rulings on evidence, a court is allowed to consider plain errors affecting substantial rights although such errors were not brought to the attention of the court. OCGA § 24-1-103(d). This Court will not extend plain error analysis to other claims of error in the absence of a specific provision by the General Assembly.

(Citation omitted.) *Miller v. State*, 309 Ga. 549, 552(2) (847 SE2d 344) (2020). This case was tried after January 1, 2013. We found no cases, however, discussing plain error review in the context presented here, where evidence was admitted in the sentencing phase of a trial not resulting in the death penalty. Even so, we need not

decide whether plain error review applies in this context in the instant case because, even if it did, Eldridge has failed to meet the four prongs of the plain error test, specifically failing to show any legal error that is "clear and not open to reasonable dispute," as discussed below. *Tucker*, 362 Ga. App. at 493(1).

OCGA § 17-10-1.2(d), provides that "[n]o sentence shall be invalidated because of failure to comply with the provisions of this Code section. This Code section shall not be construed to create any cause of action or any right of appeal on behalf of any person."

Eldridge argues that this Code section does not apply because an invalid sentence means a void sentence, and that he is not contending that his sentence is void. He states that he does not want to invalidate his sentence but instead seeks vacatur and a remand for resentencing. In analogous situations, however, our appellate courts have found no error. See *Williams v. State*, 226 Ga. App. 720(2) (487 SE2d 470) (1997) (citing the language of OCGA § 17-10-1.2(d) to find no error, despite a defendant's assertion that the trial court erred in "failing to allow him to cross-examine the victim pursuant to OCGA § 17-10-1.2(c)"); see also *Brantley v. State*, 268 Ga. 151, 153(3) (486 SE2d 169) (1997) (rejecting defendant's contention that he was

"denied effective assistance of counsel because he was not afforded the opportunity to review and rebut victim impact statements pursuant to OCGA § 17-10-1.2. The failure to comply with the Code section does not provide a basis for the invalidation of a sentence. OCGA § 17-10-1.2(d)"); *McClain v. State*, 267 Ga. 378, 388(10)(c) (477 SE2d 814) (1996) (finding, where defendant argued that the prosecutor, rather than the trial court, read written questions to defendant allegedly in violation of OCGA § 17-10-1.2(b)(6), that "failure to comply with the procedure in the Code section does not constitute reversible error absent a constitutional violation. OCGA § 17-10-1.2(d)").[7] Eldridge has not shown error, plain or otherwise.

(c) Eldridge argues that the trial court impermissibly based his sentence on victim impact evidence related to crimes of which he was acquitted and for which he could not be sentenced. Again, Eldridge's trial counsel raised no objections to the admission or presentation of the victim impact statement.

The letter that the trial court read silently referred to Calvin's death as a murder, but acknowledged that "there is no murder conviction." The letter discussed

---

[7] These cases cite an earlier version of OCGA § 17-10-1.2(d) (1993). However, the language in the statute pertinent to the issue at hand, i. e., that no sentence shall be invalidated for failure to comply with the provisions of this Code section and that this Code section creates no cause of action or right of appeal, remains the same.

the impact of the crimes on Rosa and on the letter-writer herself, who is the Lees' niece. The letter also expressed frustration about how the case was investigated, and asked the trial court to impose the maximum permissible sentences on the offenses for which Eldridge was convicted. The letter that was read into the record discussed, inter alia, the effect of Eldridge's actions on the Lees and on their children, grandchildren, great-grandchildren, and the neighborhood at large. Although the letter acknowledged that Eldridge was not found guilty of Calvin's murder, it referenced the impact on the family from losing Calvin because he was "beaten to death" at the house and stated that Calvin was "taken from us" because Eldridge wanted to steal Calvin's car to get a drug fix.

Although Eldridge was convicted of burglarizing the Lees' home and of entering Calvin's automobile with the intent of committing a theft, he was not convicted of the murder, aggravated assault, and exploitation and intimidation of elderly or disabled persons charges.

Both the Supreme Court of Georgia and this Court have determined, however, "[w]hen sentencing, a trial court may consider any evidence that was properly admitted during the guilt-innocence phase of the trial, and may also consider the

conduct and attitude of the defendant during trial." *Blake v. State*, 273 Ga. 447, 450 (4) (542 SE2d 492) (2001); accord *Boney v. Tims*, 254 Ga. 664, 665 (333 SE2d 592) (1985); *Jamale v. State*, 302 Ga. App. 140, 143-144 (2)(b) (690 SE2d 420) (2010).

Acknowledging the above-referenced cases, Eldridge concedes, "there was admittedly no error . . . in the superior court's considering evidence that Eldridge had murdered [Calvin] and attacked Rosa when it imposed sentence, the jury's not guilty verdicts on those counts notwithstanding." Eldridge maintains, however, that the trial court's consideration of evidence in the form of the victim-impact statements — which were admitted during sentencing, rather than during the trial's guilt-innocence phase — is not permissible under OCGA § 17-10-1.2(a)(3). OCGA § 17-10-1.2(a)(3) provides that in non-death-penalty cases, the trial court must allow victim-impact evidence from someone "having personal knowledge of the crime to testify about the impact of the crime on the victim, the family of the victim, or the community." Eldridge argues that "the crime" refers only to crimes for which a defendant may be sentenced and that as a result, because his counsel failed to object, this amounts to plain error.

Our Court has taken a broader view than the one Eldridge espouses. As discussed below, Eldridge has not shown any obvious, indisputable error, and at least some of the impact evidence was duplicative of what the trial court saw on video during the trial. Further, Eldridge has not shown that the trial court considered impermissible evidence in imposing its sentence. Finally, Eldridge's sentence is within statutory bounds. He has not shown that any plain error altered the outcome of the proceeding in a way that "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Tucker*, 362 Ga. App. at 493(1) (citations and punctuation omitted).

Sentencing considerations include "all aspects of the crime[.]" *Ansley v. State*, 197 Ga. App. 765 (399 SE2d 558) (1990) (finding that actions that "would have been admissible at a trial" as part of the course of conduct of a "*charged* crime ... could be admitted in the sentencing hearing") (citation omitted; emphasis added). For example, in *Jamale*, the defendant argued that the trial court, in sentencing him, erroneously considered his possession of a firearm although he was acquitted of "any offense involving his possession of a firearm." 302 Ga. App. at 143(2)(b). This Court found no error, reasoning that even though the defendant had been acquitted of these

13

offenses, "one aspect" of his conviction for robbery by intimidation was testimony that he had held the victim at gunpoint while an accomplice sought the victim's valuables. Id. at 144(2)(b).

Here, "one aspect" of Eldridge's convictions for burglary of the Lees' home and entering their automobile with the intent to commit theft was that, as outlined above, he attacked the Lees in the course of committing the crimes of which he was convicted. As a result, we cannot say that the portions of the victim-impact statement which referenced how Calvin's death and Rosa's resulting move to assisted living affected their family and community were clear, obvious, or indisputable error in light of *Jamale*, 302 Ga. App. at 143-144(2)(b), and *Ansley*, 197 Ga. App. at 765.

Further, contrary to Eldridge's contentions, there is no indication that the trial court's sentence — which was shorter than the maximum allowable — even encompassed a consideration of the victim-impact statements' references to charged crimes of which Eldridge was not convicted. The trial court stated from the bench at sentencing that, "my job here is to impose sentence *on the charges that the jury returned their verdict of guilty on*." (Emphasis added.) The trial court noted that it, along with the jurors, had seen video footage at trial of the impact of the crimes on the Lees' son

when he arrived at their home and on the police officers who responded to the scene; the trial court and the jurors also saw video of Eldridge's behavior at the scene. The trial court then recounted some of the facts underlying the crimes for which Eldridge had been convicted: entering the Lees' home and entering their automobile intending to steal it; assaulting and threatening the Carters, and striking John. Immediately after listing the crimes of which Eldridge was convicted, the trial court also said it was very troubled by the impact of Eldridge's actions on the neighborhood. The trial court opined that it was most troubled by Eldridge's invasion of the security of the Lees' home — and, indeed, Eldridge was convicted of first-degree burglary. The trial court then stated that, "[f]or all of those reasons[,]" it was accepting the State's recommendation, and it imposed the sentence.

Nothing in the trial court's actions or express statements indicates that in imposing its sentence, it relied upon any allegedly impermissible portion of the victim-impact letters. See *Demetrios v. State*, 246 Ga. App. 506, 511(4) (541 SE2d 83) (2000) (citing trial court's statements from the bench at sentencing, and finding that where trial court's "*express* reasons for imposing sentence did not include" the evidence defendant argued was impermissible, there were no grounds for reversal because "an

15

appellant must show harm as well as error. Demetrios can show no harm, even if error existed"), overruled on other grounds by *White v. State*, 305 Ga. 111, 118(2) (823 SE2d 974) (2019). Indeed, "trial courts are presumed to consider only relevant, legal evidence[,]" *Hampton v. State*, 289 Ga. 621, 627(6) (713 SE2d 851) (2011), (overruled on other grounds by *Nalls v. State*, 304 Ga. 168 (815 SE2d 38) (2018); see generally *Peek v. State*, 234 Ga. App. 731, 732(2) (507 SE2d 553) (1998) ("It is presumed that a trial judge, when he sits as the trier of fact, considered only legal evidence, unless it appears from the judgment that the trial judge considered testimony which should have been excluded.") We find no error, plain or otherwise.

2. The indictment charged Eldridge with battery for "intentionally caus[ing] visible bodily harm to John Carter by striking him[.]" Eldridge argues that the State failed to show that John sustained visible bodily injury as alleged in the indictment and that, as a result, insufficient evidence supports the battery conviction. We disagree and affirm.

A defendant "commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another." OCGA § 16-5-

23.1(a). As defined in the statute, the term "'visible bodily harm' means bodily harm capable of being perceived by a person other than the victim[.]" OCGA § 16-5-23.1(b).

At trial, John testified that Eldridge punched him in the jaw, injuring him by leaving a "knot on [his] chin" after the incident. He specifically recounted Eldridge "charging at" him and "hit[ting him] in the jaw" so hard that it "knocked [him] off balance and knocked [his] glasses off." Brandon testified that Eldridge "bolted" at his father, "screaming obscenities that he was going to f–king kill us. … [Eldridge] approached us, he drawed back and hit my father twice[,]" causing him to "stumble" to the point that Brandon "thought [his father] fell over."

John's perception of the knot on his own chin provides circumstantial evidence that this knot could have been visible to Brandon. Our Court has determined that "visible bodily harm may be shown through circumstantial evidence." *Penix v. State*, 367 Ga. App. 765, 767(1)(b) (888 SE2d 352) (2023) (finding sufficient circumstantial evidence of visible bodily harm — even where a jailer whom defendant had "pushed 'pretty hard' into a 'corner cut'" testified that she "did not perceive visible bodily harm to herself[,]" because this "does not mean [visible bodily harm] was not capable

17

of being perceived by another"); accord *Miller v. State*, 240 Ga. App. 18, 20(3) (522 SE2d 519) (1999) (recognizing that a "conviction based on circumstantial evidence [is] authorized when every reasonable inference and hypothesis except [that] of guilt [is] excluded by the evidence[,]" and finding sufficient circumstantial evidence of visible bodily injury where defendant knocked victim down, dragged her across yard, and injured her knees). The evidence was sufficient to sustain Eldridge's battery conviction.

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur.*